[No. 37361. Department One. April 29, 1965.]

ENGINE REBUILDERS, INC., et al., *Appellants*, v. THE STATE OF WASHINGTON, *Respondent.*\*

*Skeel, McKelvy, Henke, Evenson & Uhlmann*, for appellants.

\*Reported in 401 P.2d 628.

*The Attorney General, Henry W. Wager* and *James A. Furber, Assistants,* for respondent.

HALE, J.—What does the state revenue code mean by the expression *gross proceeds of sales* when applied to a company that rebuilds automobile parts and engines and takes in the used or worn-out parts in partial payment for the newly rebuilt parts?

Tam Engineering Corporation and Engine Rebuilders, Inc., at their plants in Tacoma, rebuild motor vehicle engines component units thereof, and separate parts. Their enterprise, running to thousands of transactions annually, involves reconstruction of entire engines and such complicated components as carburetors, distributors, fuel pumps, transmissions, along with simple unit parts such as brake shoes. Nearly all of their business is with repair garages and automobile dealers who do repair work for their own customers. Because their continuous operations depend largely upon a steady supply of used parts, Tam and Engine Rebuilders request a like automotive part in exchange for every part that they sell. As an inducement, they offer a substantial premium price for such used items—and allow this price as a credit on the rebuilt part or engine. The used or exchanged item is referred to in the trade, whether it be an entire engine, a component such as a carburetor or transmission, or a simple brake shoe, as a *core,* and in the sales catalogue the price which the rebuilders will pay on such an exchange is designated as a *core* deposit.

Here are sample listings taken at random from Tam's catalogue which show the price to dealers and the allowance made them if they turn in a usable core:

| | Core Deposit | Price With Core | Price Without Core |
|---|---|---|---|
| 1960 Ford Engine (passenger).... | $ 90.00 | $179.00 | $260.00 |
| 1960 Ford/w sodium valves...... | 140.00 | 427.00 | 560.00 |
| 1948 Crankshaft kit ............. | 5.00 | 25.50 | 30.50 |
| 1949 Ford brake shoe............ | .45 | 1.00 | 1.45 |
| 1961 Clutch plate ............... | .50 | 7.31 | 7.81 |
| 1957 Carburetor ................. | 3.00 | 6.50 | 9.50 |
| 1960 Ford automatic transmission. | 100.00 | 118.00 | 218.00 |
| 1961 Ford fuel pump............. | 1.50 | 7.15 | 8.65 |

Appellants allow their customers full listed core deposits on all usable items turned in on rebuilt parts, components or engines. If the customer does not have an exchange part or core, he pays the core deposit plus the catalogue price. Damaged or cracked parts receive no credit. Because a usable core or part is not always exchanged on the rebuilt core, or because some of them may be damaged or unusable, appellants buy 10 per cent of their large cores and 2 to 4 per cent of the smaller ones on the open market—all for a much lower price than is listed in their catalogue under core deposits. But the open market is decisively inadequate to supply appellants with used parts, components and engines. Appellants depend largely on the turn-ins or core deposits for their requirements.

Asserting that the core deposit allowances are arbitrarily fixed by them at a figure high enough to insure exchanges and provide them with a steady supply of engine parts and components for rebuilding, appellants urge that the catalogue prices allowed in exchange on core deposits, being far in excess of market value, should not be included in the measure of their business and occupation tax for either wholesaling (RCW 82.04.270) or manufacturing (RCW 82.04.240).

Purchases of used parts on the open market to meet the 10 per cent deficit on exchanged engines and the 2 to 4 per cent deficit on smaller parts and components, demonstrate the core deposit to be two to three times greater than the price on the open market. The open market cost to Tam and Engine Rebuilders averages a little more than 30 per cent of the core deposit. Appellants say they could not operate without fixing the core deposits at an artificially high level, a price fictitiously high enough to induce buyers to surrender their used parts, components and engines.

The difference between the listed value of core deposits and the market value for identical parts poses the problems raised in this case because the statutes putting a tax on wholesaling and manufacturing use gross income from these activities as the measure of such taxes.

On sales within the state, RCW 82.04.270 imposes the tax on wholesaling:

(1) Upon every person except persons taxable under subsection (1) of RCW 82.04.260 engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of one-quarter of one percent.

RCW 82.04.070 defines "gross proceeds of sales" as follows:

"Gross proceeds of sales" means the value proceeding or accruing from the sale of tangible personal property and/or for services rendered, without any deduction on account of the cost of property sold, the cost of materials used, labor costs, interest, discount paid, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses.

The statute defines "value proceeding or accruing" as used in RCW 82.04.090 as follows:

"Value proceeding or accruing" means the consideration, whether money, credits, rights, or other property expressed in terms of money, actually received or accrued.

■ Broader language could hardly be devised to convey the idea implicit in the foregoing definitions that the tax applies to everything that is earned, received, paid over to or acquired by the seller from the purchaser or the latter's alter ego. Accordingly, when in selling a rebuilt engine, component or automotive part, Tam Engineering or Engine Rebuilders receives in exchange a used part, the amount in dollars allowed as a credit on the price by the seller to the buyer is a part of the gross proceeds of the sale because it is in essence a part of the *value proceeding or accruing to the wholesaler* from the transaction. The prices which appellants might pay for the same used engines, components or automotive parts, were they to search and find them in the open market, have no materiality or relevancy to the transactions in which agreed values are allowed appellants' customers for their surrendered cores. The trial court correctly applied the wholesaling tax to the core deposits as an integral part of the value proceeding or

accruing from the sale of rebuilt engines, components and parts.

 As to sales made by appellants to customers outside the state, the state collects a tax on the privilege of manufacturing under RCW 82.04.240:

Upon every person except persons taxable under subsections (2) or (3) of RCW 82.04.260 engaging within this state in business as a manufacturer; as to such persons the amount of the tax with respect to such business shall be equal to the value of the products, including byproducts, manufactured, multiplied by the rate of one-quarter of one percent.

The measure of the tax is the value of the products, including byproducts, so manufactured regardless of the place of sale or the fact that deliveries may be made to points outside the state.

The term "value of the products" finds further definition in RCW 82.04.450, which, so far as here pertinent, says:

The value of products, including byproducts, extracted or manufactured shall be determined by the gross proceeds derived from the sale thereof whether such sale is at wholesale or at retail, to which shall be added all subsidies and bonuses received from the purchaser or from any other person with respect to the extraction, manufacture, or sale of such products or byproducts by the seller, . . . .

Here again we find that the legislature intended, for tax purposes, to include as a part of the price everything of value in money, or which can be measured in terms of money, received or taken in payment or exchange for the article manufactured. We thus conclude that the core deposit allowed in exchange for an automotive component, being an agreed part of the consideration and included in the price received therefor, must necessarily be deemed a part of the *gross proceeds derived from the sale.*

Accord: *St. Regis Paper Co. v. State,* 63 Wn.2d 564, 388 P.2d 520.

Judgment affirmed.

ROSELLINI, C.J., OTT and HUNTER, JJ., and RYAN, J. Pro Tem., concur.